# ROCKINGHAM,

## JANUARY TERM, A. D. 1850.

---

### HUNTOON *v.* HAZELTON.

If a minor son abscond from his father's house, and enter the service of one who for his labor furnishes the infant a reasonable support, the parent cannot recover the son's wages, without deducting the amount of the expense of such support.

An auditor may, in his discretion, examine a party on his own motion, as to facts concerning which the other party is ignorant.

An auditor may found his report upon the examination of a party, although the truth is within the knowledge of a witness who is within his reach, and is not offered.

ASSUMPSIT, brought for the services of George W. Huntoon, the infant son of the plaintiff, rendered to the defendant between the 4th of December, A. D. 1843, and the 7th of April, A. D. 1845.

It appeared by the report of an auditor that G. W. Huntoon, about the first of December, A. D. 1843, left home without the knowledge of his father, the plaintiff in this suit, and came to Portsmouth; that after his arrival he made a bargain with the defendant to work in the iron foundry belonging to the defendant. He was to have fifty cents per day and find his own board. He was then a little more than seventeen years old, and had never before worked at the business. He was to have the price above named during the first year. He went to work in the foundry on the 4th day of December, A. D. 1843, and continued at work there until the 7th day of April, A. D. 1845.

For more than a year his father did not know where he was, and gave him no assistance of any kind during the time he was at work with the defendant.

As it was proved that the price agreed upon was a reasonable one, and that the boy's services were reasonably worth no more than fifty cents per day, the auditor allowed that sum. It was proved that the boy worked in the whole 397 days, and did extra work amounting in value to the sum of $25.68.

It was also proved that the defendant had paid to Silas Huntoon, another son of the plaintiff, the sum of $141, for the board of said George W. Huntoon, and this sum has been allowed in payment by the auditor.

The defendant then offered his own testimony to prove sums paid to the said George W. Huntoon, and for him; but it was objected by the plaintiff's counsel, that as it appeared from the testimony already put in that the plaintiff knew nothing about the matter, and of course could not offer his own oath to contradict the statements of the defendant, it was not a proper case to admit his testimony. The auditor, however, admitted it. The boy, George W. Huntoon, was admitted to be within the jurisdiction of the court.

The defendant allowed George W. Huntoon to go to the stores of certain persons, and get different articles of clothing which he needed, and they were charged to the defendant's account, and he afterwards paid the same. The amount was allowed to the defendant.

This was objected to generally and particularly, because the persons on whom the orders were drawn, and of whom the goods were obtained, should have been produced. There was also the sum of $2.50 paid for school books by the defendant for George W. Huntoon, who attended a public evening school. Allowed by the auditor.

It was also proved by the testimony of the defendant that he paid the boy the sums entered in the set-off, as

cash, and amounting to $43.37. As it was proved by the testimony of Silas Huntoon, another son of the plaintiff, that George W. Huntoon had no more pocket money than boys in his situation usually have, the auditor allowed those sums.

The auditor has also disallowed the sum of $1 for an oven bottom, which the boy sold on his own account.

The accounts, as stated and allowed by the auditor, showed that the defendant had paid the sum of $14.36 over and above the full value of the labor of George W. Huntoon, and therefore the auditor reported that there was nothing due from the defendant to the plaintiff.

The plaintiff objected that any payments to George W. Huntoon, or on his account, were no discharge in this action. The sum of $11, charged in the set-off as cash, was proved to consist partly of goods and partly of cash.

The plaintiff objected that this could not be admitted under the set-off, but the auditor has allowed it in payment.

It was proved by the testimony of Silas Huntoon that boys of the age of George W. Huntoon, at that time, during the first year they worked at that business, would earn no more than sufficient to board and clothe them.

*Hatch*, for the plaintiff.

*Emery*, for the defendant.

GILCHRIST, C. J. "A father, without doubt, has a right to the services of his children during their minority, while they are under his care and are maintained by him." *Putnam*, J., in *Wodell* v. *Coggeshall*, 2 Met. 91; 1 Bl. Com. 453; 2 Kent 194.

But the parent may assent to the child's receiving compensation for the services which he renders to his employer; and if he does receive it, the parent has afterwards no

claim. This assent may be implied from various circumstances. *Gale* v. *Prescott*, 1 N. H. 28.

So, in general, one cannot furnish necessaries to an infant, and maint?.n an action for the same against the parent, without proof of some authority from the latter to do so. But this authority may result from the circumstances of the parties ; as, where the parent places the child in a situation to require necessaries, without providing the means for obtaining them. *Pidgin* v. *Cram*, 8 N. H. 352 ; *Rawlins* v. *Vandyke*, 3 Esp. 250.

The substance of this case is, that the plaintiff's minor son left home, and without the plaintiff's knowledge was employed by the defendant, who maintained him by paying for his suitable board and clothing, and furnishing trifling sums for pocket money, such as it is customary for young persons in his condition to have. This he did in recompense for the lad's services.

This the plaintiff suffered to continue for a long time. He suffered the young man to absent himself from home, and did not interpose any objection to the employment in which he had engaged, or to the terms that had been arranged for his compensation. Neither did he make any provision whatever for the support of his son during his absence. He was ignorant indeed of his son's acts, and of his residence during a considerable part of the period of his absence.

If this was voluntary ignorance, proceeding from a purpose on the parent's part of abandoning the son to his own devices or fortune, it bears a strong likeness to an assent to all the son's acts in his own behalf, and to such arrangements as he would be most obviously driven to make for the relief of his necessities.

If, on the other hand, the son had, through design or accident, and contrary to his father's wishes and endeavors, absconded from his house, and, through his own misdemeanor or misfortune, fallen into want, even if he did not

carry with him the credit of the parent to the extent of procuring reasonable supplies, common humanity would require that he should be suffered to apply his own industry for the relief of his necessities. And that is the doctrine of *Gale* v. *Parrott*, 1 N. H. 33. Without that privilege the minor would starve, and the law, which is really designed for the protection of infancy, would visit such a fault or error as is here supposed with the penalty of the most debased form of vagrancy.

In any view that can be taken of the case, to hold that this defendant, having, without any improper purpose of harboring the lad, and without any knowledge, so far as it appears, that the father did not consent to the acts of the son, administered to his reasonable wants in recompense for his services, should now be called on to account again for the value of the services so recompensed, would reverse all the sensible rules which govern such cases. All that the plaintiff can be entitled to is the value of those services beyond the amount paid by the defendant for the reasonable support of the young man; and this appears by the auditor's report to be nothing at all.

An auditor has the power to examine the parties on oath. He must, in the exercise of this power, avoid doing injustice. If one of the parties were dead, or sick, and unable to appear before the auditor, a refusal of the auditor to examine the opposite party, at his own request, would be a reasonable exercise of the auditor's discretion. *Lovering* v. *Lovering*, 13 N. H. 521.

As to the existence of other evidence, that has been held to be immaterial. *Fuller* v. *Little*, 7 N. H. 534.

*Judgment for the defendant on the report.*